Tyrone BROOKS, et al., Plaintiffs,

v.

STATE BOARD OF ELECTIONS, et al., Defendants.

Civ. A. No. 288–146.

United States District Court, S.D. Georgia, Brunswick Division.

May 29, 1991.

Laughlin McDonald, Kathleen L. Wilde, Neil Bradley, American Civ. Liberties Union Foundation, Inc., Atlanta, Ga., J. Gerald Hebert, Atty., Voting Section, Civ. Rights Div. Dept. of Justice, Washington, D.C., for plaintiffs.

David F. Walbert, Atlanta, Ga., for defendants.

Edmund Booth, Asst. U.S. Atty., Augusta, Ga.

Before KRAVITCH, Circuit Judge, EDENFIELD, Chief District Judge, and BOWEN, District Judge.

### ORDER

On April 25, 1990, the Attorney General completed his Section 5 review of the statutes being challenged in this case and declined to withdraw his objections to those statutes creating additional judgeships. The next day, defendants renewed their motion for reconsideration of the remedial portion of this Court's December 1, 1989

Order, 775 F.Supp. 1470, which calls for the elimination of unprecleared judgeships at the end of the sitting incumbents' terms. Having carefully weighed the arguments of each side, we GRANT the motion.

Defendants ask that we allow judges in unprecleared seats to remain in their posts, beyond the end of their terms if necessary, until a new electoral scheme is precleared and implemented. They contend that such a modification will guarantee time to seek preclearance from the District Court for the District of Columbia without risking the loss of sitting judges during the pendency of that litigation.

We understand the State's desire to pursue judicial preclearance, in which the parties obtain a full trial on the merits. In the case at bar, issues of statewide importance lie in the balance. While Congress provided for preclearance review by the Justice Department as an administrative alternative to the declaratory judgment action, *see Morris v. Gressette*, 432 U.S. 491, 503, 97 S.Ct. 2411, 2419–20, 53 L.Ed.2d 506 (1976), it may be that the issues in this case warrant an adversarial proceeding.

By granting the requested relief, we assure that the defendants will be able to seek judicial review of the statutes without the risk of serious disruption of Georgia's judiciary.[1] The modification does not impose an undue burden upon the plaintiffs or upon the minority voters who the plaintiffs propose to represent. Therefore, we change the second full sentence on page 26 of our Order of December 1, 1989 to read as follows:

> Incumbents whose terms end in 1990 may continue to serve in unprecleared judgeships until one of the following events occurs:
>
> a) our December 1, 1989 Order requiring preclearance is reversed by the United States Supreme Court;
>
> b) a declaratory judgment favorable to the defendants is obtained from a court of competent jurisdiction, as provided for in the Voting Rights Act;
>
> c) the state legislature of Georgia enacts a scheme for judicial elections which is precleared, and an election is conducted pursuant to that scheme.

Should the event described in either subsection (a) or (b) occur, these judges may hold over until the state conducts new elections. Further, should the plaintiffs prevail in the declaratory judgment action, the incumbents whose terms end in 1990 may continue to serve in the unprecleared judgeships for 150 days. In the event of any vacancy in an unprecleared judgeship by reason of death, resignation, or otherwise, the Governor may make appointments as authorized by the laws of Georgia.

The remainder of our Order is unchanged. The most recently created judgeships, to which no judge has ever been elected, will continue to go unfilled until precleared. Any decisions by incumbent judges holding over pursuant to this Order are of course valid. The Court's adjudication of this matter is now final.

SO ORDERED.

BOWEN, District Judge, concurring specially.

I concur in this Court's order to grant defendants' motion for rehearing, reconsideration, etc., originally filed December 15, 1989, and subsequently renewed. My concurrence with the order granting some of the relief sought in said motion is not indicative of any retreat from the position expressed in my dissent to the December 1, 1989, majority opinion. I concur in the grant of defendants' motion for rehearing and reconsideration because it allows most of the judicial machinery of the State of Georgia to remain in operational status quo while the merits of these controversies are litigated in this Court, on appeal, and, perhaps, in the District of Columbia.

---

1. As plaintiffs accurately note, defendants could have filed a declaratory judgment action at any time after the statutes creating the new judgeships were passed; the oldest of the statutes was passed in 1967. However, before the issuance of our December 1, 1989 Order, the question of whether the new judgeships were covered by Section 5 was in dispute. We assume that defendants will now expeditiously pursue judicial preclearance.

I continue in my firm belief that where the only change in an existing judicial circuit is to increase the number of judges, such is not a "covered change" within the purview of section 5 of the Voting Rights Act.

In the December 1, 1990, opinion and order, a majority of this Court found a potential for discrimination because of the possibility of perpetuating "anti-single-shot" voting practices through circuit-wide elections of judges to numbered posts by majority vote. Also, it seems that the majority was unwilling to balance fundamental interests of the State of Georgia against a mere potential for some dilution of minority interests remediable only by drastic, intrusive redistricting. To me, the concept of a judge with a special interest constituency is no less anathematic today than it was last December.

The principles I embrace are not heard only in the "cannonade" of my earlier dissent. Such concepts are emerging from diverse courts. In *State of Mississippi v. U.S.A.*, No. 87–3464, 1988 WL 90056 (D.D.C. August 2, 1988), Sentelle, Charles R. Richey, and Oberdorfer, JJ., granting a motion for summary judgment, observed "... there was no opportunity for single-shot voting prior to 1964, and there is no opportunity for single-shot voting today. Thus, undisputed facts establish that the legislation increasing the number of *numbered* judges in *multi-judge* districts does not effect any retrogression in minority voting strength, and hence has no discriminatory effect." (emphasis added). Moreover, the Fifth Circuit Court of Appeals in *League of United Latin American Citizens v. Clements*, 902 F.2d 293 (5th Cir. 1990), noted "... that judges do not represent a specific constituency." Observing that "district courts in Texas consist of individual judges who decide their cases alone", that "there can be no share of the authority vested in each judge", and that "the full authority of that office is exercised exclusively by one individual" the court ruled, "consequently, the county-wide election of district court judges does not violate the Voting Rights Act." Ibid.

I hasten to add that the aforementioned two cases, while analogous, are neither controlling nor persuasive precedent here. Because they arose under different applications of the Voting Rights Act, the standard under which those cases were decided was that of "discriminatory effect," not the "potential for discrimination" found in this case. However, since section 2 of the Voting Rights Act is arguably more intrusive than is section 5, it is not illogical to conclude that a practice which does not have the *effect* of discrimination is also without a *potential for* discrimination.

Thus, while I would prefer for this Court to reopen the entire matter and reverse its decision regarding the statutes which increase the number of judgeships in previously existing judicial circuits, I must nevertheless concur in a result which permits the operational status quo of Georgia's judicial system for the duration of litigation.