Tyrone BROOKS, et al., Plaintiffs,

v.

GEORGIA STATE BOARD
OF ELECTIONS, et
al., Defendants.

No. CV 288–146.

United States District Court,
S.D. Georgia,
Brunswick Division.

April 22, 1992.

Laughlin McDonald, Kathleen L. Wilde, Neil Bradley, Atlanta, Ga., J. Gerald Hebert, Dept. of Justice, Civ. Rights Div., Washington, D.C., for plaintiffs.

David Frank Walbert, Walbert & Herman, Atlanta, Ga., for defendants.

Edmund Booth, pro se.

## ORDER

Before KRAVITCH, Circuit Judge, EDENFIELD, Chief District Judge, and BOWEN, District Judge.

Once again this Court is called upon to fashion an equitable remedy in this Voting Rights Act case, which challenges Georgia statutes that create additional superior court judgeships. Before the Court is the Defendants' "Revised Motion to Extend the Current Injunction To Those Superior Court Judges Whose Terms Expire In 1992 And For Interim Relief Regarding Twelve Unfilled Judgeships." As we explain below, our decision is governed by the principles that guided us in our earlier remedial Orders, *Brooks v. State Bd. of Elections*, 775 F.Supp. 1470 (S.D.Ga.1989) ("Brooks I" or "the December 1, 1989 Order"), *aff'd mem.*, —— U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990) and *Brooks v. State Bd. of Elections*, 775 F.Supp. 1490 (S.D.Ga. 1990) ("Brooks II" or "the May 29, 1990 Order") (as corrected by Order of June 25, 1990), *aff'd mem.*, —— U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990). Following these principles, the Court GRANTS the Defendants' motion to extend the current injunction to allow the incumbent superior court judges whose terms will expire in 1992 to remain in their posts, pending certain specified contingencies, and DENIES the Defendants' request for interim relief with respect to the twelve, newly-created, unprecleared judgeships.

### BACKGROUND

The facts of this Voting Rights Act case are set forth in our opinion granting the Plaintiff's motion for summary judgment, and granting the Plaintiff's motion for injunctive relief. *See Brooks I*, 775 F.Supp. at 1473–74. In this Order, the Court will discuss only those facts and related developments pertinent to the pending motion.

In our Order of December 1, 1989, we held that Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, applies to judicial elections. The Court also found

that the Georgia legislature's creation of new judgeships is a "covered change" in a "standard, practice, or procedure with respect to voting" which triggers Section 5 scrutiny. *Brooks I*, 775 F.Supp. at 1475. We decided that the Plaintiffs would be entitled to "affirmative relief" if the Attorney General declined to reconsider his prior objection to the changes, or if, after reconsideration, he concluded that a particular change had a discriminatory purpose or effect. *Id.* at 1483. The remedial portion of our December 1, 1989 Order stated as follows:

> We have no difficulty holding that the Governor may not appoint judges to any non-pre-cleared position created in 1989 until that position has been precleared. Further, we hold that in the case of a judgeship added to a pre-existing circuit, no further election can be held for that position if the position is not precleared. However, we believe it a proper exercise of our equitable discretion to permit incumbents to serve out their full terms, and do not declare unprecleared judgeships added to circuits with unchanged boundaries void until the date of the next scheduled election for the position.

*Id.*

On April 25, 1990, the Attorney General completed his review of the challenged statutes and declined to withdraw his objections to those statutes creating additional judgeships. The Attorney General also entered an objection to ten additional judgeships created by the Georgia legislature in 1989 and 1990.

The next day, the Defendants requested that we reconsider the remedial portion of our December 1, 1989 Order, which called for the elimination of the unprecleared judgeships at the end of the sitting incumbents' terms. After careful consideration, we modified the remedial portion of our December 1, 1989 Order to allow the twenty-six judges in unprecleared seats to remain in their posts, beyond the expiration of their terms in 1990, so that the Defendants could obtain judicial preclearance of the challenged statutes. We modified our Order in *Brooks I*, adding the following:

> Provided that the State files a declaratory action within 90 days, incumbents whose terms end in 1990 may continue to serve in unprecleared judgeships until one of the following events occurs:
>
> (a) our December 1, 1989 Order requiring preclearance is reversed by the Supreme Court;
>
> (b) a declaratory judgment favorable to the defendants is obtained from a court of competent jurisdiction, as provided for in the Voting Rights Act;
>
> (c) The state legislature of Georgia enacts a scheme for judicial elections which is precleared, and an election is conducted pursuant to that scheme.

*Brooks II*, 775 F.Supp. at 1491 (as corrected by Order of June 25, 1990). We also reiterated our position that "the most recently created judgeships, to which no judge has ever been elected, will continue to go unfilled until precleared." *Id.*

On August 24, 1990, the Defendants filed a declaratory action against the Attorney General in the United States District Court for the District of Columbia. *See Georgia v. Barr*, CV 90–2065 (D.D.C., filed Aug. 24, 1990). The Defendants filed the declaratory action within the ninety day period prescribed by our June 25, 1990 Order. In the declaratory action, the Defendants seek a declaratory judgment that "each and every one of the statutes at issue in this case have neither the purpose nor the effect of denying or abridging the right to vote on account of race or color, and that each and every one of said statutes may be enforced by [the state] without impediment on account of Section 5...." (Complaint for Declaratory Judgment at 11–12.) The Defendants also seek a declaratory judgment on other, related issues. The *Brooks* Plaintiffs are not party to the litigation in the District of Columbia. Both parties to this litigation, however, expect the declaratory action litigation to continue for another year or two.

### ANALYSIS

■ The Defendants' motion to extend the current injunction and to obtain interim relief appeals to the equitable powers of

this three-judge Court. We have limited discretion to fashion an appropriate injunctive remedy under Section 5. *Brooks I*, 775 F.Supp. at 1482 (citing *Perkins v. Matthews*, 400 U.S. 379, 396, 91 S.Ct. 431, 441, 27 L.Ed.2d 476 (1971) and *NAACP v. Hampton County Election Comm'n*, 470 U.S. 166, 183, 105 S.Ct. 1128, 1137–38, 84 L.Ed.2d 124 (1985). "In fashioning its decree granting relief, [a three-judge court] should adopt a remedy that in all the circumstances of the case implements the mandate of § 5 in the most equitable and practicable manner and with least offense to its provisions." *Clark v. Roemer*, — U.S. —, —, 111 S.Ct. 2096, 2105, 114 L.Ed.2d 691, 705 (1991). We now turn to the present request for injunctive and interim relief.

## I. Extension of Terms of Incumbent Judges

■ The Defendants request that the Court permit the twenty-two incumbent judges whose terms will expire at the end of 1992, and who are not explicitly covered by this Court's earlier orders, to holdover. The Defendants argue that "[t]he need for judges to handle the vastly increasing litigation caseload is, if anything, more acute now than when this Court granted its original relief allowing the judges whose terms expired in 1990 to hold over." (Br.Supp.Defs.' Rev.Mot. Extend Current Inj. and for Interim Relief at 5.)

The Plaintiffs oppose this holdover relief because, they assert, it "tell[s] covered jurisdictions that the longer they delay complying with the Act, and the more 'exigent circumstances' they are able to create, the more likely it is that their delays will be excused and their day of Section 5 reckoning postponed." (Br.Opp.Mot. Extend Current Inj. and for Additional Relief at 9 n. 4.) The Plaintiffs also contend that several of the grounds for our original decision to allow incumbent judges whose terms expired in 1990 to continue serving as judges are no longer valid.

In the earlier Order, we assumed that the need for an extension would be temporary because the Defendants would pursue judicial preclearance expeditiously. *See Brooks II*, 775 F.Supp. at 1491 n. 1. The Plaintiffs argue that this assumption has proven false because the Defendants' litigation strategy has prolonged the litigation in the district court for the District of Columbia. The Court will not penalize the Defendants for pursuing their legal position. As we noted in our Order of May 29, 1990, "issues of statewide importance lie in the balance" and "the issues in this case [may] warrant an adversarial proceeding." *Brooks II*, 775 F.Supp. at 1491. Plaintiffs have not shown that the Defendants have acted in bad faith in the District of Columbia litigation. Therefore, granting the requested relief will continue to "assure that the defendants will be able to seek judicial review of the statutes without the risk of serious disruption of Georgia's judiciary." *Id.*

Plaintiffs' prediction that the preclearance litigation in the District of Columbia is likely to last one or two more years underscores why the Court must extend the remedial relief to the twenty-two judges whose terms are about to expire. As we have explained previously, substantial disarray would result from simultaneously voiding judgeships when the incumbents' terms expire at the end of 1992: "If we were to set aside numerous judgeships abruptly, the remaining judges would be overwhelmed by the resulting increase in work and the court system thrown into disarray. This would be harmful to all citizens of the State, including minorities." *Brooks I*, 775 F.Supp. at 1484. Although the declaratory action is taking longer than we expected, we believe that this rationale for allowing incumbents to remain in office still applies. Plaintiffs argue that denying the present motion will permit an orderly reduction in the number of judges because the terms of only less than half of the sitting judges expire in 1992. A substantial reduction in the number of judges, no matter how orderly, will risk serious disruption of the judicial process in Georgia. Of course, should the Plaintiffs prevail in the declaratory action, the incumbents' terms will expire. Even in that event, however, the incumbent judges "may continue

to serve in the unprecleared judgeships for 150 days." *Brooks II*, 775 F.Supp. at 1491.

We are mindful of the havoc to be wreaked if we hold that twenty-two unprecleared judgeships will become vacant at the end of 1992. We are also mindful, however, that each successive injunction may delay the expeditious resolution of this controversy. Accordingly, the Court extends its Order of May 29, 1990 to include the twenty-two judges sitting in unprecleared judgeships whose terms are due to expire on December 31, 1992. This extension will remain in force until the declaratory action in the District of Columbia is concluded, or until the Georgia legislature enacts a scheme for judicial elections which is precleared, and an election is conducted pursuant to that scheme. In no event, however, will the injunction extend beyond March 1, 1994, at which time the Court will entertain motions for reconsideration as to why further extension of its Order is warranted.

## II. Interim Relief for the Twelve Newly Created Judgeships

█ The State argues that the Court should allow the Governor to appoint judges for an interim period to twelve unfilled judgeships, which were created by the Georgia legislature in 1989, 1990 and 1991. The State proposes a procedure that affords the Plaintiffs an opportunity to object to the Governor's appointment, and allows for judicial oversight. The State suggests that the interim judges appointed pursuant to this process should sit until the final resolution of the declaratory action and should be subject to the same terms and conditions as the originally challenged 48 judgeships.

This proposal does not merit much discussion. We have decided this issue in our previous remedial orders, which were affirmed by the Supreme Court, —— U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990). In *Brooks I* and *Brooks II*, we held that the ten judgeships created in the 1989 and 1990 sessions of the General Assembly must remain unfilled until precleared: "We have no difficulty holding that the Governor

may not appoint judges to any non-precleared position created in 1989 until that position has been precleared." *Brooks I*, 775 F.Supp. at 1483; *Brooks II*, 775 F.Supp. at 1491 ("The most recently created judgeships, to which no judge has ever been elected, will continue to go unfilled until precleared."). We now hold that the same rule applies to the two additional judgeships created by the 1992 legislature.

The State argues that the Court should grant interim relief for all twelve newly-created, unfilled judgeships because the caseload and concomitant need for judges has increased markedly since 1990, and because a final judgment in the District of Columbia litigation may not be entered for one or more years. Although we sympathize with the increasing caseload of superior court judges, and the burden on the citizens of the State of Georgia, we cannot grant this interim relief. There is a distinction between allowing incumbent judges to remain in their posts pending the outcome of the declaratory action, and allowing the Governor to appoint judges to newly-created, unprecleared judgeships. Moreover, we cannot accept the Defendants' argument that gubernatorial appointment would not violate Section 5. The Defendants contend that "plaintiff cannot possibly claim that anyone's *voting* rights would be adversely affected. The simple fact is that there would be no *election*, under this proposal, until preclearance occurred. Thus, there cannot possibly be any claim of discrimination against any black *voters* if the State's request is granted." (Defs.' Reply Br. at 5.) The Defendants' proposed procedure, although contemplated as a temporary measure, is a change that alters state election law, and must be precleared under Section 5. The Supreme Court has made clear that Section 5 applies to changes "affecting the creation or abolition of an elective office." *Presley v. Etowah County Comm'n*, —— U.S. ——, ——, 112 S.Ct. 820, 822, 117 L.Ed.2d 51, 63 (1992); *see Allen v. Bd. of Elections*, 393 U.S. 544, 569, 89 S.Ct. 817, 833, 22 L.Ed.2d 1 (1969) (Section 5 applies to legislation making important county office appointive instead of elective). Our decision to permit the in-

cumbent judges whose terms expired in 1990 and 1992 to remain in office, subject to certain contingencies, is a narrow exception to the general rule that "[i]f voting changes subjection to § 5 have not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting the State from implementing the changes." *Clark v. Roemer,* —— U.S. ——, ——, 111 S.Ct. 2096, 2101, 114 L.Ed.2d 691, 701 (1991) (citing *Allen v. State Bd. of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969)). Therefore, we deny the Defendants' motion for interim relief regarding the twelve newly-created, non-precleared judgeships.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the Defendants' motion to extend the current injunction to allow the incumbent superior court judges whose terms will expire in 1992 to remain in their posts, pending certain specified contingencies. The Court DENIES the Defendants' request for interim relief with respect to the twelve, newly-created, unprecleared judgeships. Our decision to grant the State of Georgia only part of the relief it requests is grounded in our prior remedial Orders and our interpretation of the Voting Rights Act.

SO ORDERED, this 22nd day of April, 1992.

BOWEN, District Judge, concurring specially.

I concur with the foregoing order only because its provisions are consistent with the majority's earlier opinion and the law of the land as announced by the Supreme Court. I observe, however, that the judicial system of Georgia is already in disarray. Dependent only upon the accident of who preceded them in office, some superior court judges are now freely engaged in contested elections while others are "holdovers" who don't presently have to run but who face an uncertain future. Meanwhile, the Governor appoints some judges to positions to which they can be later elected without hindrance, yet he cannot fill much-needed, newly-created positions because of the constraints of this litigation. The distinction is legalistic, arbitrary and nonsensical. If we had set out to contrive a set of circumstances which would demoralize the State's trial judiciary, frustrate the legitimate efforts of the State's Chief Executive, confuse the public, and actually retard the advancement of minorities, our effort would be crowned with success.

The courts have only given a logical, if debatable, interpretation to an Act of Congress. No one intended the present effect of the Voting Rights Act. Judges should not have any semblance of an identifiable constituency to whom they owe allegiance. The Congress should act courageously and quickly to extricate us from this mess.